```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                 DIVISION OF ST. THOMAS AND ST. JOHN

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
     v.                        )    Criminal No. 2019-60
                               )
MELIK PETERSEN,                )
                               )
          Defendant.           )
```

**ATTORNEYS:**

**Gretchen Shappert, United States Attorney**
**Nathan Brooks, AUSA**
**Adam Francis Sleeper, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
  *For the United States of America,*

**Richard Coughlin, FPD**
**Melanie Lark Turnbull, AFPD**
Office of the Federal Public Defender
St. Thomas, U.S.V.I.
  *For Melik Petersen.*

<u>**ORDER**</u>

**GÓMEZ, J.**

Before the Court is the motion of Melik Petersen to exclude fingerprint evidence as a sanction for late discovery.

## I.   FACTUAL AND PROCEDURAL HISTORY

On the morning of September 11, 2019, three individuals in a black Nissan Altima attempted to rob an armored car outside of the Scotiabank in Altona, St. Thomas, U.S. Virgin Islands. After

a brief firefight with the armored car's guards, the three individuals fled the scene in the black Nissan.

While investigating the crime, the Virgin Islands Police Department ("VIPD") identified a vehicle in a nearby parking lot that matched the description of the vehicle used during the attempted robbery. Further investigation revealed that the vehicle had been rented by Khamry DeSilva ("DeSilva"). DeSilva told the VIPD that she had rented the car for her boyfriend, Melik Petersen ("Petersen").

On September 12, 2019, Petersen was arrested on a federal criminal complaint. On October 3, 2019, the Grand Jury returned an 11-count indictment (the "Indictment") charging Petersen with crimes arising out of the September 11, 2019, attempted robbery.

Petersen was arraigned on October 9, 2016. Following his arraignment, the Magistrate Judge entered a scheduling order setting dates for various deadlines and proceedings in this matter. The scheduling order provided that "[d]iscovery will be completed by October 16, 2019." *See* ECF No. 16 at 1. The scheduling order also scheduled the trial in this matter for November 25, 2019.

On October 16, 2019, the United States provided Petersen with discovery in the form of 180 pages of documents and surveillance video. Included within that discovery was a VIPD

Evidence Collection Log ("Evidence Log"). The Evidence Log indicated that the VIPD had collected, among other things, "[o]ne (1) blk tint w/ blk tape pass rear window of blk nissan," "[o]ne (1) blk tint w/ blk tape from pass front seat floor area of blk nissan," "[o]ne (1) blk tint w/ blk tape from driver's front door window of blk nissan," and "[o]ne (1) blk tint w/ blk tape from driver's rear window of blk nissan." *See* ECF No. 24, Exh. 1 at 1.

On October 22, 2019, Petersen filed a discovery demand. Petersen requested that the United States provide him, among other things, an opportunity to inspect and copy

> any and all reports and documents concerning laboratory analysis, scientific tests or experiments and physical examinations in connection with this case which are in the possession, custody or control of the Government, the existence of which is or by the exercise of due diligence should become known to the United States Attorney, to include but not be limited to:
> a) All fingerprint and palmprint impressions taken and comparisons made, including the precise location from which each print was taken.

ECF No. 23, Exh. 1 at 1-2.

On November 18, 2019, the FBI Laboratory in Quantico, Virginia, provided the United States a Laboratory Report ("Lab Report"). The first line of the Lab Report reads "Communication(s): October 22, 2019." *See* ECF No. 24, Exh. 2 at 1. The Lab Report indicates that latent print testing was

conducted on 10 items recovered from the black Nissan. That day, the United States provided Petersen a copy of the Lab Report along with laboratory case notes, a laboratory case record, and a CV for its expert.

On November 19, 2019, Petersen moved to exclude any evidence and testimony related to fingerprints. Petersen argues that this evidence must be excluded because its late disclosure violated the Magistrate Judge's scheduling order and Petersen no longer has

> sufficient time to review the outstanding underlying expert discovery, secure a fingerprint expert if necessary, provide proper expert notice, review the report and underlying documents with the defense expert, permit the expert to conduct his/her own testing, and prepare to adequately respond to the government's expert at trial.

ECF No. 23 at 5-6. Petersen asserts that "it appears that items and prints recovered from the car were not submitted for testing until sometime after October 22, 2019." *See id.* at 1-2. Petersen also asserts that

> [t]he conduct described herein is not novel. The United States Attorney's Office has made a routine practice of late disclosures of discovery. In 2019 alone, the government provided untimely discovery in *United States v. Raphi Joseph*, Criminal Action 2019-40, *United States v. John Jackson*, Criminal Action No. 2019-15, *United States v. Karime Williams*, Criminal Action No. 2019-41, and *United States v. Aubrey Frett*, Criminal Action No. 2018-37. The cases cited, however, only reflect ones in which the Defendant filed a motion to exclude evidence. The practice of submitting late discovery is more

   pervasive. Thus Mr. Petersen requests that the Court exclude the proffered fingerprint evidence provided on November 18, 2019 as a sanction for a violation of the Court's Order.

*Id.* at 4.

## II. DISCUSSION

 Federal Rule of Criminal Procedure 16 ("Rule 16") establishes the rules governing discovery in criminal cases. Rule 16 provides

> (E) Documents and Objects. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>  (i) the item is material to preparing the defense;
>  (ii) the government intends to use the item in its case-in-chief at trial; or
>  (iii) the item was obtained from or belongs to the defendant.
> (F) Reports of Examinations and Tests. Upon a defendant's request, the government must permit a defendant to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if:
>  (i) the item is within the government's possession, custody, or control;
>  (ii) the attorney for the government knows--or through due diligence could know--that the item exists; and
>  (iii) the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

Fed. R. Crim. P. 16(a)(1)(E)-(F).

 Rule 16 also provides remedies for discovery violations:

>>Failure to Comply. If a party fails to comply with this rule, the court may:
>>>(A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
>>>(B) grant a continuance;
>>>(C) prohibit that party from introducing the undisclosed evidence; or
>>>(D) enter any other order that is just under the circumstances.

Fed. R. Crim. P. 16(d)(2). "[O]n its face, the Rule does not require a district court to do anything--Rule 16 merely states that the court 'may' take such actions." *United States v. Lopez*, 271 F.3d 472, 483 (3d Cir. 2001). "In determining an appropriate remedy, a district court should consider the reasons for the party's delay in producing the materials, including whether it acted intentionally or in bad faith, and the degree of prejudice to the opposing party." *United States v. Lee*, 573 F.3d 155, 161 (3d Cir. 2009). "A trial court should, however, 'impose the least severe sanction that will accomplish prompt and full compliance with the discovery order.'" *Jacobs v. Gov't of Virgin Islands*, 53 Fed. App'x 651, 652 (3d Cir. 2002) (citations omitted).

### III. ANALYSIS

In *United States v. Davies*, 244 F.3d 666 (2001), the defendants were accused of robbing a bank while wearing masks. *Id.* at 667. On February 15, 2000, the defendants were indicted and charged with armed bank robbery and related crimes. *Id.* at

668. On February 18, 2000, the district court entered an order (1) directing the United States to produce all Rule 16 discovery materials by February 28, 2000; and (2) scheduling a trial for April 3, 2000. *Id.* On March 24, 2000, an FBI agent contacted the state crime laboratory and requested that DNA testing on the masks worn during the robberies--which had been provided to the lab on February 4, 2000--be expedited. *Id.* The request was granted, and the lab orally reported preliminary results on March 30, 2000, and provided a written report on March 31, 2000. *Id.* After receiving the report, the defendants moved to "exclude the DNA evidence as untimely and rejected any continuance of the April 3 trial date." *Id.* at 669.

At a hearing on that motion, the United States presented evidence that the initial delay in testing the masks was due to a backlog of cases and lab protocol, which provided that "[i]tems are tested on a first-come, first-served basis unless there is a request for expedited testing." *Id.* Once testing began, it generally took about 4 days to complete. *Id.* The testing on the masks did not begin until March 27 because of a backlog of cases at the lab. *Id.* "The government did not explain why it did not request expedited testing until March 24." *Id.* Following the hearing, the district court granted the

defendants' motion and excluded all DNA evidence. On appeal, the Eighth Circuit affirmed. *Id.* at 673.

The Eighth Circuit explained that district courts have "broad discretion in imposing sanctions on parties for failing to comply with discovery orders." *Id.* at 670. When determining the appropriate sanction for a discovery violation, "'a court must weigh the reasons for the government's delay and whether it acted intentionally or in bad faith; the degree of prejudice, if any, suffered by the defendant; and whether any less severe sanction will remedy the prejudice and the wrongdoing of the government.'" *Id.* (quoting *United States v. Hastings,* 126 F.3d 310, 317 (4th Cir.1997)).

> We cannot say that the district court abused its discretion in deciding that excluding the DNA evidence was the least severe sanction likely to remedy the prejudice and deter future wrongdoing on the part of the government.
>
>> It may well be true that alternative sanctions are adequate and appropriate in most cases, but it is equally clear that they would be less effective than the preclusion sanction and that there are instances in which they would perpetuate rather than limit the prejudice to the defense and the harm to the adversary process.
>
> *Taylor v. Illinois,* 484 U.S. 400, 413 (1988). Here, the government was more than negligent; the district court found that the government had acted in reckless disregard of the discovery deadline and offered no explanation for its failure to comply. The government could have easily complied with the

>    discovery deadline by checking with the state crime lab on the status of the testing or the need to request expedited testing. The government waited until almost a month after the discovery deadline to request expedited testing and did not notify the district court or the defense about the DNA testing or the possibility of a delay until two days before trial was scheduled to begin. Nor can we agree that there was no tactical advantage to be gained by the government as a result of the delay; but for the district court's exclusion order, highly prejudicial evidence would have been admitted against defendants and, even with a continuance, the defense would have been forced to play catchup.
>
>    Finally, "even in the absence of prejudice, the integrity of the judicial process and scheduling considerations alone may justify suppression of otherwise admissible evidence offered by the delinquent party if the discovery violation was intentional or willful." *United States v. Russell,* 109 F.3d at 1511. Here, the district court found a reckless discovery violation and prejudice. Recklessness is arguably equivalent to the combination of negligence and the failure of a prior continuance in *United States v. Wicker,* 848 F.2d at 1061–62. We hold that the district court was justified in excluding evidence that was produced late because of the government's reckless misconduct and that prejudiced the defense, rather than granting a continuance, in order to maintain the integrity of the judicial process and respect the pressing scheduling problems of the district court.

*Id.* at 672-73 (footnotes and alterations omitted).

   **A. Reason for Delay**

   Here, it appears that the black Nissan and each of the items ultimately tested for fingerprints were taken into custody at the latest on September 12, 2019, when Petersen was arrested. The United States is unsure of exactly when it submitted the

items recovered in the black Nissan for testing but knew it was not until "late October," after the discovery deadline had passed. *See Nov. 21, 2019, Status Conference* at 2:38:24 P.M.-2:38:28 P.M. The United States did not indicate whether it sought to expedite the testing. The United States also failed to provide a reason for why it waited so long to submit the items for testing.

While the Court does not believe the United States "intentionally" violated the discovery deadline in this matter, the Court finds that the cavalier attitude of the United States with respect to that deadline demonstrates "reckless disregard of the discovery deadline" and amounts to bad faith. *See Davies*, 244 F.3d at 672, Indeed, when asked why it violated the discovery deadline, the United States merely shrugged its shoulders and said "testing takes time . . . we all know it doesn't come the next day." *See Nov. 21, 2019, Status Conference* at 2:36:53 P.M.-2:37:00 P.M. Nevertheless, despite being aware that "testing takes time," the United States did not request an extension of the discovery deadline and chose to submit items for fingerprint testing only after that deadline had passed. The Magistrate Judge's scheduling orders are Court orders. They are not, as the United States seems to believe, Court suggestions that can be ignored when it is convenient to do so.

**B. Prejudice**

Six days before Petersen was scheduled to go to trial, the United States provided Petersen with evidence that his fingerprints were found in the black Nissan. Disputing "latent fingerprint examination" evidence requires an expert with the appropriate "technical knowledge." *See, e.g.*, *United States v. Mitchell*, 365 F.3d 215, 234 (3d Cir. 2004). Like the DNA evidence at issue in *Davies*, the new fingerprint evidence here "require[s] thorough investigation by defense counsel, including almost certainly retaining an expert witness or witnesses." *See Davies*, 244 F.3d at 671; *see also United States v. Dowling*, 855 F.2d 114, 118 (3d Cir. 1988) (affirming exclusion of expert witness disclosed 5 days before trial in part because the government "could not reasonably be expected to search for its own expert and find one available to come to the Virgin Islands in time to be given the available facts and the opportunity to assimilate them"), *aff'd,* 493 U.S. 342 (1990). Moreover, as Petersen points out, the fingerprint evidence disclosed by the United States is incomplete: "There is no indication of how the lab obtained the known prints of . . . Petersen, no chain of custody in the discovery, nor any information on the manner and location of the latent prints obtained from items in the vehicle

in question." ECF No. 32 at 8. This opens up even more avenues that defense counsel must explore.

### C. Appropriate Sanction

The Court must "'impose the least severe sanction that will accomplish prompt and full compliance with the discovery order'" *Jacobs*, 53 Fed. App'x at 652, "remedy the prejudice[,] and deter future wrongdoing on the part of the government," *Davies*, 244 F.3d at 673. Petersen does not seek to continue the trial in this matter. Even if the Court were to continue the trial, however, this would do nothing to deter "future wrongdoing" and ensure compliance with discovery orders in future cases. *See id.* It is arguable that the discovery violation here is *de rigueur* for the United States in this Court. What is not arguable is that the attitude of the United States with respect to complying with discovery deadlines is nonchalant. That attitude is especially problematic where, as here, the Court's docket is exceptionally crowded. Between the date of this order and the end of December, 20 criminal jury trials are scheduled in the St. Thomas/St. John Division of this Court. More criminal trials are scheduled in January and February of 2020. On top of these criminal trials, a multitude of other criminal and civil proceedings are also scheduled during this period.

Considering together the reason for the discovery delay, the prejudice that this delay will cause Petersen, and the Court's capacity to accommodate a rescheduled trial, the Court holds that the appropriate remedy is exclusion of the fingerprint evidence.[1]

The premises considered, it is hereby

**ORDERED** that Melik Petersen's motion to exclude fingerprint evidence docketed at ECF Number 23 is **GRANTED**; and it is further

**ORDERED** that all fingerprint evidence and all testimony related to such evidence is **EXCLUDED** from the trial in this matter.

S\_____
**Curtis V. Gómez
District Judge**

---

[1] It is worth noting that the remedy the Court provides here is very similar to the remedy sought by the United States against the defendant in *United States v. Dowling*, 855 F.2d 114 (3d Cir. 1988), which was approved by the Third Circuit. *See id.* at 118 ("The court noted first that Dowling gave the government only five days' notice of the proposed proffer . . . . The late proffer substantially prejudiced the government because, on such short notice, it could not reasonably be expected to search for its own expert and find one available to come to the Virgin Islands in time to be given the available facts and the opportunity to assimilate them. We therefore cannot hold that the district court abused its discretion in declining to admit the testimony on this ground alone.").